**COMMONWEALTH of Pennsylvania,
Appellee**

v.

**Michael SERRANO, Appellant.**

Superior Court of Pennsylvania.

Submitted Jan. 7, 2013.

Filed Feb. 4, 2013.

 

 

Alfred T. Farrell, Altoona, for appellant.

Christopher J. Schmidt, Assistant District Attorney, Harrisburg, for Commonwealth, appellee.

BEFORE: BENDER, ALLEN, and MUSMANNO, JJ.

OPINION BY ALLEN, J.:

Michael Serrano ("Appellant") appeals from the judgment of sentence imposed after he was found guilty of delivery of a controlled substance (cocaine), possession of a controlled substance with intent to deliver/delivery (heroin), criminal conspiracy to possess with intent to deliver and/or deliver cocaine and heroin, and criminal

use of a communications facility.[1] We vacate in part and affirm in part.

The pertinent facts may be summarized as follows: Between September 2009 and April 2010, law enforcement officers from the City of Altoona Police Department and the Pennsylvania Office of the Attorney General conducted multiple controlled purchases of cocaine from an individual named Marisa Moser. In conducting these transactions, the law enforcement officers utilized a confidential informant and/or undercover officers to purchase the cocaine. N.T, 10/24/11, at 41–209; N.T., 10/25/11, at 9–39. Ms. Moser obtained the cocaine from Gene Carter, which she then unwittingly supplied to the confidential informant or the undercover police officers. *Id.* Mr. Carter was repeatedly observed by police officers at the location of the cocaine transactions involving Ms. Moser. *Id.*

In May 2010, based on their surveillance of Mr. Carter and Ms. Moser, the City of Altoona Police Department and the Pennsylvania Office of the Attorney General sought to intercept Mr. Carter's telephone communications. On May 10, 2010, this Court entered an order permitting electronic surveillance. N.T., 10/25/11, at 110–112. Electronic surveillance commenced on May 11, 2010 until May 21, 2010, during which law enforcement officials recorded telephone conversations where Appellant was heard conducting transactions for the sale of heroin to Mr. Carter. *Id.* at 110–156.

On November 10, 2010, Appellant was charged by grand jury presentment. Appellant was subsequently arrested. A criminal information was filed against Appellant on February 2, 2011, charging him as follows:

> Count 1: Delivery of a controlled substance: That [Appellant] did unlawful-ly, willfully and feloniously deliver a controlled substance; that is, on May 12, 2010, in Philadelphia Pennsylvania, [Appellant] . . . did feloniously deliver *heroin.*
>
> Count 2: Possession with intent to deliver a controlled substance: That [Appellant] did unlawfully, willfully and feloniously possess with intent to deliver a controlled substance; that is, between, on or about April 2010 and May 21, 2010, in Philadelphia, Pennsylvania, [Appellant] . . . did possess with intent to deliver *heroin.*
>
> Count 3: Criminal Conspiracy: That [Appellant] did agree with one or more other persons that they . . . would engage in conduct which constitutes a crime . . .; that is, between on or about April 2010 and July 2010 in Philadelphia, Pennsylvania, [Appellant] did conspire and agree with Gene Carter and others that they . . . would engage in conduct constituting the crime of possession with intent to deliver a controlled substance in Blair County, Pennsylvania, and in pursuance of such conspiracy one or more overt acts were committed.
>
> Count 4: Criminal Use of a Communication Facility: [Appellant] did use a communication facility to commit . . . delivery of a controlled substance . . .; that is between the approximate dates of May 11, 2010 and May 21, 2010, [Appellant] did use a telephone to facilitate the delivery of controlled substances in Philadelphia and Blair County, Pennsylvania. . . .

Criminal Information, 2/2/11, at 1–2 (emphasis added).

On February 10, 2011, the Commonwealth filed a notice pursuant to Pa. R.Crim.P. 582, informing Appellant that he

---

1. 35 P.S. §§ 780–113(a)(30), 18 Pa.C.S.A § 903, and 18 Pa.C.S.A. § 7512.

would be tried with Mr. Carter.[2] On August 16, 2011, Appellant filed a pre-trial motion to have his case severed from Mr. Carter's. The Honorable Elizabeth A. Doyle of the Blair County Court of Common Pleas conducted a hearing on Appellant's motion on August 22, 2011. On August 26, 2011, Judge Doyle entered an order denying Appellant's severance motion.

On October 24, 2011, a jury trial commenced in the Court of Common Pleas of Blair County before The Honorable Thomas G. Peoples, Jr. At the conclusion of trial on October 27, 2011, after Appellant's counsel made his closing statements, and prior to the issuance of jury instructions, the Commonwealth made an oral motion to amend the pre-printed verdict slip pertaining to Appellant. N.T., 10/27/11, at 145–148. Specifically, the Commonwealth explained that Count 1 on the verdict slip incorrectly stated that Appellant was charged with delivery of *cocaine* rather than *heroin*. *Id.* Additionally, the Commonwealth sought to amend the verdict slip at Count 3 to have it include crimes committed in Blair County (in addition to Philadelphia, Centre, and Cambria counties, as listed on the verdict slip). Appellant's counsel objected. The trial court denied the Commonwealth's motion. *Id.*

On October 27, 2011, the jury entered the following guilty verdicts against Appellant:

Count 1: Delivery of a Controlled Substance, namely *cocaine,* a schedule II controlled substance, on or about May 12, 2010, within Philadelphia County for distribution in Blair County, Pennsylvania.

Count 2: Possession With Intent to Deliver a Controlled Substance/Delivery of a Controlled Substance, namely *heroin,* a schedule I controlled substance, between or about April, 2010 and May 21, 2010, within Philadelphia County for distribution in Blair County.

Count 3: On the charge of Criminal Conspiracy with Gene Carter and others (to Possess With Intent to Deliver and/or Deliver a Controlled Substance, namely *cocaine and heroin*), between April 2010 and July 2010, within Philadelphia, Centre and Cambria Counties, Pennsylvania.

Count 4: Criminal Use of a Communications Facility, between May 11, 2010 and May 21, 2010.

Verdict Slip, 10/27/11, at 1–2.

Appellant filed a motion for judgment of acquittal notwithstanding the verdict on December 6, 2011. In his motion for acquittal, Appellant argued that his case should have been severed from Mr. Carter's, and that the verdicts at Count 1 and Count 3 were against the weight of the evidence because the Commonwealth presented no evidence or testimony that Appellant engaged in any cocaine transactions. Accordingly, Appellant requested the trial court enter a verdict of not guilty at Counts 1 and 3, or in the alternative, grant him a new trial. The trial court denied Appellant's motion on December 22, 2011.

On March 15, 2012, the trial court sentenced Appellant to ten to thirty years of imprisonment on the charge of delivery of cocaine, a consecutive ten to thirty years for possession with intent to deliver/deliv-

---

**2.** In addition to Mr. Carter, the Commonwealth's notice of joinder also named five other defendants with whom Appellant was to be tried. However, the record indicates that the charges against the five other defendants were disposed of separately leaving only the charges against Mr. Carter and Appellant pending before the trial court. *See* Commonwealth Notice, 2/10/11; Motion to Sever, 8/16/11, at 1–2.

ery of heroin, a consecutive seven and one-half to fifteen years for criminal conspiracy (cocaine and heroin), and a consecutive three and one-half to seven years for criminal use of a communications facility. No post-sentence motions were filed.

Appellant filed a notice of appeal on April 13, 2012. The trial court did not direct Appellant to comply with Pa.R.A.P. 1925. On June 22, 2012, the trial court entered an order referring this Court to the record in the above captioned matter in lieu of a Pa.R.A.P.1925(a) opinion.

Appellant presents the following issues for our review:

I. DID THE TRIAL COURT'S DENIAL OF APPELLANT'S MOTION FOR SEVERANCE CONSTITUTE AN ABUSE OF DISCRETION WHERE THE MAJORITY OF EVIDENCE PRESENTED TO THE JURY WAS UNRELATED TO THE CHARGES LODGED AGAINST THE APPELLANT RESULTING IN PREJUDICE TO THE APPELLANT?

II. DID THE TRIAL COURT COMMIT AN ERROR OF LAW BY ALLOWING THE ADMISSION OF AUDIO RECORDINGS, ALLEGEDLY OF APPELLANT WHERE THE COMMONWEALTH FAILED TO ESTABLISH THE NECESSARY FOUNDATION FOR THE ADMISSION OF THE RECORDINGS?

III. WAS THE APPELLANTS' CONVICTION FOR POSSESSION OF A CONTROLLED SUBSTANCE, I.E. COCAINE, HIS CONVICTION FOR POSSESSION WITH INTENT TO DELIVER A CONTROLLED SUBSTANCE, I.E. HEROIN AND COCAINE, HIS CONVICTION FOR CRIMINAL CONSPIRACY, AND HIS CONVICTION FOR CRIMINAL USE OF A COMMUNICATION FACILITY BEYOND A REASONABLE DOUBT AGAINST THE WEIGHT OF THE EVIDENCE PRESENTED BY THE COMMONWEALTH?

Appellant's Brief at 11.

For purposes of clarity and ease of analysis, we reorganize and restate Appellant's issues as follows:

1. DID THE TRIAL COURT ABUSE ITS DISCRETION IN DENYING APPELLANT'S MOTION TO SEVER?

2. WAS THE JURY VERDICT FINDING APPELLANT GUILTY OF DELIVERY OF COCAINE, POSSESSION WITH INTENT TO DELIVER/DELIVERY OF HEROIN, CRIMINAL CONSPIRACY TO DELIVER/POSSESS WITH INTENT TO DELIVER COCAINE AND HEROIN, AND CRIMINAL USE OF A COMMUNICATIONS FACILITY, AGAINST THE WEIGHT OF THE EVIDENCE?

3. DID THE TRIAL COURT COMMIT AN ERROR OF LAW BY ALLOWING THE ADMISSION OF AUDIO RECORDINGS, ALLEGEDLY OF APPELLANT, WHERE THE COMMONWEALTH FAILED TO ESTABLISH THE NECESSARY FOUNDATION FOR THE ADMISSION OF THE RECORDINGS?

Appellant first argues that the trial court abused its discretion by denying his pre-trial motion seeking to have his case severed. Appellant's Brief at 16–19. Appellant claims that the failure to sever his case from Mr. Carter's created jury confusion resulting in Appellant being convicted

of delivery of *cocaine*, a crime with which he was not charged. Upon careful review of the record, we find no abuse of discretion in the trial court's denial of Appellant's motion to sever.

Pennsylvania Rule of Criminal Procedure 582 provides:

(1) Offenses charged in separate indictments or informations may be tried together if:

(a) the evidence of each of the offenses would be admissible in a separate trial for the other and is capable of separation by the jury so that there is no danger of confusion; or

(b) the offenses charged are based on the same act or transaction.

Pa.R.Crim.P. Rule 582(A)(1)(a) and (b) (formerly Pa.R.Crim.P. 1127).

Additionally, Pa.R.Crim.P. 583, pertaining to the severance of offenses, states that "[t]he court may order separate trials of offenses or defendants, or provide other appropriate relief, if it appears that any party may be prejudiced by offenses or defendants being tried together." Pa. R.Crim.P. Rule 583 (formerly Pa. R.Crim.P. 1128).

█ Our Supreme Court, considering Pa.R.Crim.P. Rules 582 and 583 together, set forth the following three-part test for deciding a motion to sever:

Where the defendant moves to sever offenses not based on the same act or transaction that have been consolidated in a single indictment or information, or opposes joinder of separate indictments or informations, the [trial] court must ... determine: [1] whether the evidence of each of the offenses would be admissible in a separate trial for the other; [2] whether such evidence is capable of separation by the jury so as to avoid danger of confusion; and, if the answers to these inquiries are in the affirmative, [3] whether the defendant will be unduly prejudiced by the consolidation of offenses.

*Commonwealth v. Collins,* 550 Pa. 46, 703 A.2d 418, 422 (1997) *citing Commonwealth v. Lark,* 518 Pa. 290, 302, 543 A.2d 491, 496–97 (1988).

█ In addition, it is well established that "the law favors a joint trial when criminal conspiracy is charged." *Commonwealth v. Housman,* 604 Pa. 596, 986 A.2d 822, 835 (2009). We have explained:

A joint trial of co-defendants in an alleged conspiracy is preferred not only in this Commonwealth, but throughout the United States.

It would impair both the efficiency and the fairness of the criminal justice system to require ... that prosecutors bring separate proceedings, presenting the same evidence again and again, requiring victims and witnesses to repeat the inconvenience (and sometimes trauma) of testifying, and randomly favoring the last tried defendants who have the advantage of knowing the prosecution's case beforehand. Joint trials generally serve the interests of justice by avoiding inconsistent verdicts and enabling more accurate assessment of relative culpability.

A defendant requesting a separate trial must show real potential for prejudice rather than mere speculation. The defendant bears the burden of proof, and we will only reverse a decision not to sever if we find a manifest abuse of discretion by the trial court.

*Commonwealth v. Colon,* 846 A.2d 747, 753–754 (Pa.Super.2004) (citations omitted).

█ We find no manifest abuse of discretion in the trial court's denial of Appellant's severance motion. Numerous fac-

tors militated in favor of joinder, including the fact that the charges against both defendants arose from the same course of events. In addition, the same evidence of the recorded telephone conversations between Appellant and Mr. Carter was to be presented in both cases, as well as the same witnesses, (i.e. the law enforcement officers who conducted the surveillance of Appellant and Mr. Carter), were to testify. Therefore, "[s]everance would have resulted in unnecessary repetition", and joinder was warranted. *Commonwealth v. Marsh*, 388 Pa.Super. 610, 566 A.2d 296, 298 (1989).

Moreover, the evidence against Mr. Carter formed part of the "natural development" of the facts and history of Appellant's case. *Commonwealth v. Childress*, 452 Pa.Super. 37, 680 A.2d 1184, 1188 (1996) (evidence of crimes other than the one in question may be admitted where such evidence is part of the history of the case and forms part of the natural development of the facts). Based on surveillance of Mr. Carter, law enforcement officers discovered that Mr. Carter was selling controlled substances in Blair County. As a consequence, the law enforcement officers were able to obtain permission to intercept Mr. Carter's telephone conversations "to try to find the scope of the organization to find out exactly who Mr. Carter was getting his drugs from, how many people he was getting drugs from, who was working for him, distributing, or anything of that nature and who his customers were." N.T., 10/25/11, at 110. On May 10, 2010, this Court entered an order granting permission to intercept Mr. Carter's telephone conversations. *Id.* at 112. Two days later, law enforcement officials intercepted telephone calls between Appellant and Mr. Carter discussing the exchange of heroin. *Id.* at 141–163. Thus, the evidence against Mr. Carter would have been relevant in Appellant's case. In light of the foregoing, we find no abuse of discretion in the trial court's denial of Appellant's severance motion.

Appellant claims that denial of his severance motion caused him to suffer actual prejudice in that the joinder of his case with Mr. Carter's resulted in jury confusion. Appellant relies on the fact that the jury found him guilty of delivery of *cocaine*, a crime with which Appellant was not charged (the criminal information charged Appellant with delivery of *heroin*). We disagree with Appellant, however, that his conviction for delivery of *cocaine* was the result of jury confusion caused by the denial of his severance motion.

Our review of the record reveals that on October 27, 2011, after Appellant's counsel had made his closing statements, the Commonwealth made an oral motion to amend the error on the pre-printed verdict slip. Specifically, the Commonwealth sought to amend Count 1 on the verdict slip to reflect that Appellant was charged with delivery of *heroin* and not *cocaine*, and that the evidence presented at trial was in support of a charge of delivery of *heroin*, not *cocaine*. N.T., 10/27/11, at 145–148. The trial court, however, denied the Commonwealth's motion to amend the verdict slip to replace *cocaine* with *heroin*. The jury subsequently returned a verdict of guilty at Count 1 for delivery of *cocaine*.

It is apparent from the foregoing that the guilty verdict for delivery of *cocaine* was unlikely the result of jury confusion caused by the denial of Appellant's severance motion, as Appellant claims. Rather, the verdict resulted from verdict slip error. The verdict slip should have stated that Appellant was charged with delivery of *heroin*, consistent with the criminal information. The trial court declined to correct the verdict slip when the Common-

wealth moved to amend it.[3] We disagree with Appellant that this error on the verdict slip supports severance of his case.

 Nevertheless, we recognize that at Count 1, Appellant was not charged with delivery of *cocaine.* "The law is clear ... that a court is without jurisdiction to convict a defendant of a crime for which he was not charged, and a challenge to a court's subject matter jurisdiction is not waivable." *Commonwealth v. Knox,* 50 A.3d 749, 757, n. 12 (Pa.Super.2012) (citations omitted).[4] Here, in the criminal information filed on February 2, 2011, the Commonwealth charged Appellant at Count 1 with the delivery of *heroin.* The jury however found Appellant guilty at Count 1 with the delivery of *cocaine.* At trial, the Commonwealth presented evidence and testimony that Appellant was involved in transactions for the delivery of *heroin* to Mr. Carter. N.T., 10/25/11, at 148–173; N.T., 10/26/11, at 6–15. The Commonwealth's witnesses did not testify that Appellant was engaged in the transaction of *cocaine. Id.*[5] In light of the foregoing, we conclude that Appellant cannot be found guilty of delivery of *cocaine,* a crime with which Appellant was not charged, and for which the Commonwealth did not present evidence. The judgment of sentence entered against Appellant at Count 1 for delivery of *cocaine* must be vacated.[6]

 Our disposition vacating the judgment of sentence at Count 1 for delivery of *cocaine* may upset the trial court's sentencing scheme. *See Commonwealth v. Alexander,* 16 A.3d 1152, 1157, n. 10 (Pa.Super.2011) *citing Commonwealth v. Sutton,* 400 Pa.Super. 291, 583 A.2d 500, 502 n. 2 (1990) (citations omitted) ("Where one, convicted of several crimes, successfully challenges his judgment of sentence on appeal, remand for resentencing may be just under the circumstances, as it may further the sentencing court's plans for protection of society from future criminal activity and rehabilitation of the criminal and reduce the possibility of disparate and

3. *See Commonwealth v. McCloskey,* 441 Pa.Super. 116, 656 A.2d 1369, 1376 (1995) (finding that an objection to the exclusion of a charge from the verdict slip, which was made before the jury reached a verdict, was timely).

4. "[There are] two requirements for subject matter jurisdiction as it relates to criminal defendants: the competency of the court to hear the case, and the provision of formal notice to the defendant of the crimes charged in compliance with the Sixth Amendment of the United States Constitution and Article I, Section 9, of the Pennsylvania Constitution." *Commonwealth v. Jones,* 593 Pa. 295, 929 A.2d 205, 210 (2007).

"[T]o invoke [subject matter] jurisdiction ... it is necessary that the Commonwealth confront the defendant with a formal and specific accusation of the crimes charged. This accusation enables the defendant to prepare any defenses available to him, and to protect himself against further prosecution for the same cause; it also enables the trial court to pass on the sufficiency of the facts alleged in the indictment or information to support a conviction. The right to formal notice of charges, guaranteed by the Sixth Amendment to the Federal Constitution and by Article I, Section 9 of the Pennsylvania Constitution, is so basic to the fairness of subsequent proceedings that it cannot be waived even if the defendant voluntarily submits to the jurisdiction of the court." *Commonwealth v. Little,* 455 Pa. 163, 314 A.2d 270, 272–273 (1974).

5. While the evidence indicates that on May 12, 2010, Mr. Carter conducted cocaine transactions, the Commonwealth did not present evidence that Appellant participated in these cocaine transactions. N.T., 10/25/11, at 139–182 N.T., 10/26/11, at 3–201.

6. We disagree with the Commonwealth's contention that the verdict slip can be construed as containing a harmless typographical error because it listed cocaine instead of heroin, and that the judgment of sentence should be upheld because of the overwhelming evidence presented that Appellant delivered heroin.

irrational sentencing.").[7] Therefore, remand for resentencing is required under the circumstances of this case.

We additionally recognize that at Count 3, Appellant was found guilty of criminal conspiracy "to possess with intent to deliver and/or deliver a controlled substance, namely *cocaine and heroin* ... within Philadelphia, Centre, and Cambria counties, Pennsylvania." However, the Criminal Information filed against Appellant did not include any charges against Appellant pertaining to *cocaine.* Accordingly, Appellant could not be convicted and sentenced at Count 3 for conspiracy-*cocaine,* a crime with which he was not charged and for which no evidence was presented. However, based on the record, we conclude that at Count 3 Appellant was properly charged with, and convicted of conspiracy-*heroin.* Therefore, we decline to vacate Count 3 in its entirety. However, with respect to Appellant's conviction for conspiracy at Count 3, we remand for resentencing specifically for the trial court to consider the fact that Appellant was not charged at Count 3 with conspiracy-*cocaine,* nor was any evidence presented in that regard.

■ We note that the criminal information at Count 3 charged Appellant with committing conspiracy in Philadelphia and Blair counties. The verdict slip, however, omitted Blair County, and instead charged Appellant with conspiracy in Philadelphia, Cambria and Center counties. This variance between the criminal information and the verdict slip with respect to the location of the conspiracy does not constitute reversible error. The evidence of record indicates that Appellant and Mr. Carter were engaged in a conspiracy in which Appellant, while in Philadelphia, arranged to provide heroin to Mr. Carter, and that Mr. Carter traveled from Blair County to Philadelphia County to obtained the heroin, which he then packaged and distributed in Blair County. *Id.* Thus, the verdict finding Appellant guilty of conspiracy to deliver/possess with intent to deliver heroin in Philadelphia, was valid and consistent with the criminal information, notwithstanding the omission of Blair County and inclusion of Centre and Cambria counties on the verdict slip. *See also Commonwealth v. Moyers,* 391 Pa.Super. 262, 570 A.2d 1323, 1325 (1990) ("although a conspiracy may be formed in one county, an overt act, although it entails only a slight amount of activity in another county in furtherance of that conspiracy, is sufficient to establish jurisdiction for the purposes of a conspiracy prosecution").

■ We next address Appellant's argument that his convictions were against the weight of the evidence. Pa.R.Crim.P. 607 provides, in relevant part, that a claim that the verdict was against the weight of the evidence is waived unless it is raised with the trial judge in a motion for a new trial in a written or oral motion before the court prior to sentencing, or in a post-sentence motion. Pa.R.Crim.P. 607(A)(1)-(3).

---

7. In its sentencing order, the trial court provided the following reasons for its sentence: [Appellant] is possessed of an appalling prior criminal record which includes violations of the Commonwealth's narcotics laws dating back to ... 1993.... [Appellant's] crimes and his conspiratorial actions necessitated the expenditure of massive amounts of time, money, and human effort by many law enforcement officers in the Commonwealth in order that his criminal enterprise might be terminated.... [Appellant] represents a threat to the safety of the community and must be removed therefrom for the protection of all law abiding citizens. All efforts at treatment or therapy which the justice system has provided to [Appellant] thus far have failed to rehabilitate him and to dissuade him from crime and [the trial court] is convinced that he must be removed from society.
Judgment of Sentence, 3/15/12, at 5–7.

Here, before sentencing, Appellant filed a motion for acquittal raising a weight of the evidence claim, which the trial court denied. Appellant has thus preserved his weight of the evidence claim for appellate review.

█ Our scrutiny of whether a verdict is against the weight of the evidence is governed by the principles set forth in *Commonwealth v. Champney,* 574 Pa. 435, 832 A.2d 403 (2003):

> The weight of the evidence is exclusively for the finder of fact who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses. An appellate court cannot substitute its judgment for that of the finder of fact. Thus, we may only reverse the lower court's verdict if it is so contrary to the evidence as to shock one's sense of justice.
>
> Moreover, where the trial court has ruled on the weight claim below, an appellate court's role is not to consider the underlying question of whether the verdict is against the weight of the evidence. Rather, appellate review is limited to whether the trial court palpably abused its discretion in ruling on the weight claim.

*Champney,* 832 A.2d at 408 (citations omitted).

In the present case, Appellant was found guilty of delivery of a controlled substance (cocaine), possession with intent to deliver/delivery (heroin), criminal conspiracy to possess with intent to deliver/deliver (cocaine and heroin), and criminal use of a communications facility. As explained above, Appellant's conviction for delivery of a controlled substance (cocaine) must be vacated because Appellant was not charged with delivery of cocaine, and the Commonwealth did not present evidence that Appellant sold cocaine. Additionally, to the extent that the jury verdict indicat-

ed that Appellant was guilty of conspiracy to deliver/possess with intent to deliver cocaine, such verdict is untenable.

█ Insofar as Appellant challenges the weight of the evidence, we conclude that the trial court abused its discretion in denying Appellant's December 6, 2011 motion for judgment of acquittal for delivery of cocaine and conspiracy to deliver/possess with intent to deliver cocaine, since no evidence was presented that Appellant engaged in cocaine transactions. *See Champney, supra.*

█ With regard to Appellant's remaining convictions, however, we find no merit to his weight claims. At trial, the Commonwealth presented numerous audio recordings of telephone conversations in which Appellant was heard conducting heroin transactions with Mr. Carter. N.T., 10/25/12, at 143–175; Commonwealth Exhibit 35. The telephone recordings included a conversation in which Mr. Carter is heard ordering forty grams of heroin from Appellant. *Id.* at 151–152. In addition, the telephone recordings include discussions between Mr. Carter and Appellant in which Appellant indicated that he had heroin, and that he was going to have an unidentified female try it "to determine the quality of it and if it was good", after which Appellant would supply it to Mr. Carter. *Id.* at 143. The Commonwealth additionally presented evidence of a recorded conversation between Appellant and Mr. Carter, in which Appellant informed Mr. Carter that he was going to acquire for Mr. Carter heroin of a very high quality. *Id.* at 148. In further conversations, Appellant and Mr. Carter were heard discussing in detail the quality of past heroin purchases received by Mr. Carter from Appellant, indicating that Appellant and Mr. Carter had an ongoing relationship. *Id.* at 143–151. Further, the

Commonwealth presented the testimony of a witness named Jessica Cartwright who stated that she regularly accompanied Mr. Carter on trips from Blair County to Philadelphia to purchase controlled substances including heroin. N.T., 10/26/11, at 149–167. She testified that upon returning to Altoona from Philadelphia, Mr. Carter packaged the controlled substances for distribution in Altoona. *Id.* Ms. Cartwright testified that Appellant and Carter knew each other, and that during a trip with Mr. Carter from Altoona to Philadelphia, she consumed heroin at Appellant's house. *Id.* It was exclusively within the province of the jury to weigh the Commonwealth's evidence. We conclude, therefore, that Appellant's remaining convictions are not so contrary to the evidence as to shock one's sense of justice, and Appellant's weight claims fail.

Finally, we address Appellant's assertion that the trial court erred by permitting the Commonwealth to introduce into evidence audio recordings of conversations between Appellant and Mr. Carter. Appellant's Brief at 19. Appellant contends that the Commonwealth failed to establish the necessary foundation for admission of the evidence, by failing to properly identify the voice in the recording as that of Appellant. *Id.* Appellant asserts that the Commonwealth introduced only the testimony of Agent Moore of the Pennsylvania Office of the District Attorney to verify that it was Appellant's voice on the recording, and that without any other witnesses to corroborate Appellant's identity on the recording, it was an abuse of discretion for the trial court to admit the audio recordings into evidence. *Id.* We find no merit to this claim.

 With regard to evidentiary challenges, it is well established that "[t]he admissibility of evidence is at the discretion of the trial court and only a showing of an abuse of that discretion, and resulting prejudice, constitutes reversible error. An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record. Furthermore, if in reaching a conclusion the trial court overrides or misapplies the law, discretion is then abused and it is the duty of the appellate court to correct the error." *Commonwealth v. Glass,* 50 A.3d 720, 724–725 (Pa.Super.2012) (internal quotations omitted).

Pa.R.E. Rule 901 provides in pertinent part:

Requirement of authentication or identification

(a) General provision. The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims.

(b) Illustrations. By way of illustration only, and not by way of limitation, the following are examples of authentication or identification conforming with the requirements of this rule:

(1) Testimony of witness with knowledge. Testimony that a matter is what it is claimed to be.

\* \* \*

(5) Voice identification. Identification of a voice, whether heard firsthand or through mechanical or electronic transmission or recording, by opinion based upon hearing the voice at any time under circumstances connecting it with the alleged speaker.

(6) Telephone conversations. Telephone conversations, by evidence

that a call was made to the number assigned at the time by the telephone company to a particular person or business, if (A) in the case of a person, circumstances, including self-identification, show the person answering to be the one called, or (B) in the case of a business, the call was made to a place of business and the conversation related to business reasonably transacted over the telephone.

█ Here, Agent Moore testified with regard to the audio recordings of Appellant's voice as follows:

Assistant Attorney General: ... [T]he voices indicated on this message looks like it's a conversation designated between [Appellant] and Gene Carter, is that right?

Agent Moore: That's correct.

Assistant Attorney General: How did you come to learn it was the voice of [Appellant]?

Agent Moore: A couple different factors. Again this phone was also subscribed to him in his name at that address which is the address of his mother. His driver's license didn't depict that address but that was his mother's address.

\* \* \*

Assistant Attorney General: Is there any other methods by which you were able to identify [Appellant's] voice?

Agent Moore: Yes. Later in the investigation —— I'm sorry for that answer because it's going to end up being hearsay so I wanted to stop it. Something else somebody told me so I wanted to stop my answer on that, sorry.

Assistant Attorney General: Did you ever have an opportunity to speak to [Appellant]?

Agent Moore: Yes I did. I had an opportunity to speak to him and it was the same voice ...

N.T., 10/25/11, at 142–143.

We find no abuse of discretion in the trial court's decision to admit evidence of the audio recordings. Agent Moore testified that the telephone number was registered to Appellant, and further stated that he had personally spoken with Appellant, and recognized the voice on the audio recording as belonging to Appellant. *See Commonwealth v. Starks*, 304 Pa.Super. 527, 450 A.2d 1363, 1364–1365 (1982) (finding adequate foundation for admission of tape recordings where the interviewing detective identified the tape in its original physical form, and identified the voices and the opening contents of the recording). Appellant's claim that the audio recordings were improperly admitted is without merit.

Given the foregoing analysis, we vacate the judgment of sentence entered against Appellant for delivery of a controlled substance (cocaine), we affirm Appellant's convictions for possession with intent to deliver (heroin), and we affirm Appellant's conviction for criminal conspiracy (heroin) and criminal use of a communications facility. We remand for resentencing as to all counts because our vacating the judgment of sentence for delivery of cocaine may upset the sentencing scheme, and for the trial court, at sentencing, to take into consideration the fact that Appellant was not charged with and could not be convicted of criminal conspiracy (cocaine).

Judgment of sentence vacated in part and affirmed in part. Case remanded for resentencing. Jurisdiction relinquished.